IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JEREMY COWEN,

                    Plaintiff,

vs.                                    Case No. 09-1206-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits.  The matter has been fully briefed by the

parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's decision

to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence

supports the Commissioner's decision is not simply a quantitative

exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it really constitutes mere conclusion.  Ray

v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court

is not to reweigh the evidence, the findings of the Commissioner

will not be mechanically accepted.  Nor will the findings be

affirmed by isolating facts and labeling them substantial

evidence, as the court must scrutinize the entire record in

determining whether the Commissioner's conclusions are rational.

Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The

court should examine the record as a whole, including whatever in

the record fairly detracts from the weight of the Commissioner's

decision and, on that basis, determine if the substantiality of

the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected

to result in death or last for a continuous period of twelve

months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental

impairment or impairments must be of such severity that they are

not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir.
1993). At step five, the burden shifts to the Commissioner to
show that the claimant can perform other work that exists in the
national economy. Nielson, 992 F.2d at 1120; Thompson v.
Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner
meets this burden if the decision is supported by substantial
evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC). This
RFC assessment is used to evaluate the claim at both step four
and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II. **History of case**

On December 16, 2008, administrative law judge (ALJ) David
L. Wurzel issued his decision (R. at 14-27). Plaintiff alleges
that he has been disabled since December 20, 2005 (R. at 14).
Plaintiff is insured for disability insurance benefits through
the date of the decision (R. at 16). At step one, the ALJ
determined that plaintiff has not performed substantial gainful
activity since December 20, 2005, the alleged onset date of
disability (R. at 16). At step two, the ALJ found that plaintiff

had the following severe impairments: mild cervico-thoracic scoliosis; musculoligamentous lumbar strain; hypertension, well-controlled on medication; gastroesophageal reflux disease; obesity; and nonsevere adjustment disorder with depressed mood (R. at 16). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19). After determining plaintiff's RFC (R. at 19), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 25). At step five, the ALJ found that plaintiff can perform other work that exists in significant numbers in the national economy (R. at 25-26). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 27).

**III. Did the ALJ err by his failure to list certain impairments as "severe" impairments at step two?**

As noted above, the ALJ found that plaintiff had a number of severe impairments. The ALJ also found that plaintiff's adjustment disorder with depressed mood was not a severe impairment (R. at 16). Plaintiff argues that the ALJ erred by failing to include lumbar radicular syndrome, a suspected herniated disc and L5 nerve root, L5-S1 spondylolisthesis, leg pain and numbness, right S1 joint dysfunction, anxiety and depression as severe impairments (Doc. 11 at 28).

The issue before the court is whether it is reversible error if the ALJ fails to list all the severe impairments at step two.

5

In <u>Brescia v. Astrue</u>, 287 Fed. Appx. 626, 628-629 (10th Cir. July
8, 2008), the claimant argued that the ALJ improperly determined
that several of her impairments did not qualify as severe
impairments.  The court held that once an ALJ has found that
plaintiff has at least one severe impairment, a failure to
designate another as "severe" at step two does not constitute
reversible error because, under the regulations, the agency at
later steps considers the combined effect of all of the
claimant's impairments without regard to whether any such
impairment, if considered separately, would be of sufficient
severity.  Again, in <u>Hill v. Astrue</u>, 289 Fed. Appx. 289, 291-292
(10th Cir. Aug. 12, 2008), the court held that the failure to
find that additional alleged impairments are also severe is not
in itself cause for reversal so long as the ALJ, in determining
plaintiff's RFC, considers the effects of all of the claimant's
medically determinable impairments, both those he deems "severe"
and those "not severe."

    In making his RFC findings, the ALJ stated that he
considered the nonsevere mental impairment in combination with
all other medically determinable impairments at step three and
thereafter in the sequential evaluation (R. at 19).  In light of
the fact that the ALJ found other severe impairments at step two,
and considered all other medically determinable impairments in
the subsequent steps of the sequential evaluation process, the

6

court finds no reversible error by the ALJ at step two.

**IV.  Did the ALJ err at step three by failing to properly consider listed impairment 1.04A?**

At step three, plaintiff has the burden of demonstrating, through medical evidence, that his/her impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively.  Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

The criteria for listed impairment 1.04 is as follows:

> 1.04 Disorders of the spine (e.g., herniated
> nucleus pulposus, spinal arachnoiditis,
> spinal stenosis, osteoarthritis, degenerative
> disc disease, facet arthritis, vertebral
> fracture), resulting in compromise of a nerve
> root (including the cauda equina) or the
> spinal cord. With:
>
> A. Evidence of nerve root compression
> characterized by neuro-anatomic distribution
> of pain, limitation of motion of the spine,
> motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by
> sensory or reflex loss and, if there is
> involvement of the lower back, positive
> straight-leg raising test (sitting and
> supine); or
>
> B. Spinal arachnoiditis, confirmed by an

7

operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2009 at 458-459).

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. The ALJ indicated that no physician credibly opined that plaintiff's condition met or equaled a listing, and further noted that three state agency physicians opined that plaintiff's impairments did not meet or equal a listed impairment (R. at 19). However, the ALJ did not specifically discuss any listed impairment, including 1.04A.

As noted by the ALJ, there is no medical opinion evidence that plaintiff's impairments meet or equal any listed impairment, including 1.04A. Although plaintiff cites to medical evidence that indicates that some of the criteria of 1.04A are met (Doc. 11 at 26), plaintiff failed to point to any medical evidence specifically finding that plaintiff had compromise of a nerve root or the spinal cord, or evidence of nerve root compression. For a claimant to show that his impairment matches a listing, it

must meet all of the specified medical criteria; an impairment
that manifests only some of the criteria of the listed
impairment, no matter how severely, does not qualify. <u>Zebley</u>,
493 U.S. at 530, 110 S. Ct. at 891. Accordingly, the court finds
no basis for a remand with respect to plaintiff's claim of error
regarding the ALJ's failure to specifically discuss whether
plaintiff's impairments met or equaled listed impairment 1.04A.
<u>Levins v. Astrue</u>, 2010 WL 1881452 at *6 (E.D. Wis. May 10,
2010)(no basis for remand regarding listed impairment 1.04A when
plaintiff failed to point to any specific medical evidence
regarding the requirement of nerve root compression).

Furthermore, the ALJ relied on numerous medical tests
indicating normal or negative findings (R. at 20-21). A
radiographic report of January 5, 2006 showed a normal radiograph
of the lumbar spine (R. at 226). A nerve conduction study of
January 17, 2006 was normal, indicating no evidence of
lumbrosacral radiculopathy (R. at 225). An MRI test on January
19, 2006 found a "normal" MRI study of the lumbar spine, with no
evidence of degenerative disc disease (R. at 222). On March 6,
2006, testing was done in light of plaintiff's complaints of low
back pain radiating down his right leg. The report indicated a
"normal" EMG and nerve conduction study of the right leg, with no
electrodiagnostic evidence of neuropathy, plexopathy or
radiculopathy (R. at 240). A whole body bone scan of July 14,

2006, with attention to the pelvis and lumbar spine, indicated "normal" findings (R. at 375). Finally, a x-ray of January 16, 2008 showed "normal views of the lumbar spine" (R. at 325). Dr. Stein found no documentation of radiculopathy (R. at 228). The ALJ can reasonably rely on the fact that testing does not indicate nerve root compression. See Melendez v. Astrue, 359 Fed. Appx. 8, 11 (10th Cir. Dec. 16, 2009).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007). Based on the medical testing indicating negative or normal findings, the absence of any medical opinion that

plaintiff's impairments meet or equal listed impairment 1.04A, and the lack of any medical evidence or medical opinion evidence specifically finding that plaintiff had compromise of a nerve root or the spinal cord, or evidence of nerve root compression, the court finds that the ALJ's conclusion that plaintiff's impairments do not meet or equal any listed impairment (including 1.04A) is reasonable and consistent with the evidence.

**V.  Did the ALJ err in his consideration of the evidence of treatment providers?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective

medical findings alone or from reports of individual
examinations, such as consultive examinations.  If an ALJ intends
to rely on a nontreating physician or examiner's opinion, he must
explain the weight he is giving to it.  <u>Hamlin v. Barnhart</u>, 365
F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally
sufficient explanation for rejecting the opinion of treating
medical sources in favor of non-examining or consulting medical
sources.  <u>Robinson</u>, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity
of the claimant's impairments should be given controlling weight
by the Commissioner if well supported by clinical and laboratory
diagnostic techniques and if it is not inconsistent with other
substantial evidence in the record.  <u>Castellano v. Secretary of
Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20
C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating
physician opinion is not given controlling weight, the ALJ must
nonetheless specify what lesser weight he assigned the treating
physician opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083
(10th Cir. 2004).  A treating source opinion not entitled to
controlling weight is still entitled to deference and must be
weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by

relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Plaintiff first argues that the ALJ erred by failing to give controlling weight to the opinions of Dr. Kueser, a treating physician (Doc. 11 at 18). The record contains two medical source statements from Dr. Kueser (R. at 339-340, 318). The first one, dated December 7, 2007, opines that plaintiff can stand and/or walk for only 1 hour in an 8 hour workday, and sit for only 2 hours in an 8 hour workday (R. at 339-340). The second one, dated August 15, 2008, further limits plaintiff to only sitting for 1 hour in an 8 hour workday (R. at 4, 318).

The ALJ noted the opinions of Dr. Kueser, who is board certified in family medicine. However, the ALJ noted that he is not board certified in neurosurgery, as is Dr. Stein, or in physical medicine and rehabilitation, as are Dr. Fluter and Dr. Murati. The ALJ therefore gave little weight to the opinion of Dr. Keuser, and greater weight to the opinions of Dr. Stein, Dr.

13

Fluter, and Dr. Murati because the medical qualifications of the latter three physicians were far more relevant to plaintiff's alleged impairments, and because extensive testing strongly supported their opinions as opposed to the opinions of Dr. Keuser (R. at 24).

As set forth above, a treating physician's opinion is entitled to controlling weight only if the opinion(s) is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. The ALJ gave little weight to the opinions of Dr. Keuser because of the fact that other treating and examining physicians who were specialists did not find plaintiff to be as limited as alleged by Dr. Keuser. Furthermore, the opinions of these other physicians were supported by the extensive testing results indicating normal or negative findings, as set forth above. The opinions of Dr. Keuser were clearly inconsistent with other substantial evidence in the record, and the ALJ therefore did not err by failing to give controlling weight to his opinions.

Plaintiff next argues that the ALJ erred by failing to give proper consideration to the opinions of Peggy Massoth, LMSW, who was plaintiff's treating therapist (Doc. 11 at 23). Ms. Massoth opined in a medical source statement-mental that plaintiff was extremely limited in 6 categories, markedly limited in 8 categories, and moderately limited in 6 categories (R. at 315-

316).

The ALJ gave little weight to her opinions, noting that she is a social worker, not a physician. The ALJ points out that her treatment notes do not contain a mental status examination. He found that her opinions are contradicted by the far better-supported opinions of Dr. Mintz, Dr. Cohen and Dr. Adams, whom the ALJ identified as physicians (R. at 23). Dr. Mintz is a licensed psychologist (R. at 245), Dr. Adams is a psychologist (R. at 274), and Dr. Cohen is a psychologist (R. at 28, 148).

Dr. Mintz conducted a mental status examination on the plaintiff on March 25, 2006 (R. at 243-245). Dr. Mintz concluded that plaintiff was a pleasant gentleman with positive work efforts and positive work orientation who gets along well with others. Dr. Mintz found that plaintiff appears able to understand simple and complex instructions, but that his concentration capacity appears somewhat diminished by pain symptoms (R. at 23, 244). Dr. Cohen and Dr. Adams were nonexamining psychologists who opined, based on their review of the record, including the report of Dr. Mintz, that plaintiff did not have a severe mental impairment (R. at 24-25, 252-264, 274).

Under the regulations, acceptable medical sources include licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a)(1)-(2) (2009 at 361); 20 C.F.R. § 404.1502 (2009 at 355). A licensed clinical social worker is not an

15

"acceptable medical source" under the regulations. 20 C.F.R. §
404.1513(a). However, evidence from "other sources," including
social workers, may be based on special knowledge of the
individual and may provide insight into the severity of an
impairment and how it affects the claimant's ability to function.
Opinions from other medical sources are important and should be
evaluated on key issues such as impairment severity and
functional effects, along with the other relevant evidence in the
file. The fact that an opinion is from an "acceptable medical
source" is a factor that may justify giving that opinion greater
weight than an opinion from a medical source who is not an
"acceptable medical source" because "acceptable medical sources"
are the most qualified health care professionals. However,
depending on the particular facts in a case, and after applying
the factors for weighing opinion evidence, an opinion from a
medical source who is not an "acceptable medical source" may
outweigh the opinion of an "acceptable medical source," including
the medical opinion of a treating source. SSR 06-03p, 2006 WL
2329939 at **2,3,5.

As noted above, the fact that an opinion is from an
"acceptable medical source" is a factor that may justify giving
that opinion greater weight than an opinion from a medical source
who is not an "acceptable medical source" because "acceptable
medical sources" are the most qualified health care

professionals.  Psychologists Dr. Mintz, Dr. Cohen, and Dr. Adams
are acceptable medical sources, which is a legitimate reason for
giving their opinions greater weight than the opinion of Ms.
Massoth, a social worker, who is an "other" source.

Furthermore, under the regulations, 20 C.F.R.
§§ 404.1527(d)(5), 416.927(d)(5), an ALJ can give greater weight
to a medical specialist's opinion, such as a psychologist, rather
than to opinions of non-specialists.  Sneed v. Barnhart, 88 Fed.
Appx. 297, 300 (10th Cir. Jan. 30, 2004); Palmer v. Dep't of
Health & Human Services, 50 Fed. Appx. 957, 961-962 (10th Cir.
Nov. 13, 2002).  Therefore, an ALJ may properly accept the
opinion of a consulting specialist over that of a general
practitioner.  Although experience and knowledge of the case lie
on the side of the treatment provider, expertise and knowledge of
similar cases lie on the side of the consulting specialist.  How
these weigh in a particular case is a question for the ALJ,
subject only to the rule that the final decision must be
supported by substantial evidence.  Stephens v. Heckler, 766 F.2d
284, 288-289 (7th Cir. 1985)(the court upheld the decision of the
ALJ to give greater weight to the opinions of an orthopedic
surgeon and a neurologist, who performed consultative
examinations on the plaintiff, over the opinions of plaintiff's
treating general practitioner).  Dr. Mintz, Dr. Cohen, and Dr.
Adams are specialists in mental health treatment, which is also a

legitimate reason for giving their opinions greater weight than
the opinion of Ms. Massoth, a social worker.  The court finds
that substantial evidence supports the decision of the ALJ to
give little weight to the opinions of Ms. Massoth.

**VI.  Did the ALJ make proper RFC findings pursuant to SSR 96-8p?**

According to SSR 96-8p, the RFC assessment "must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts...and nonmedical
evidence."  The ALJ must explain how any material inconsistencies
or ambiguities in the evidence in the case record were considered
and resolved.  The RFC assessment must always consider and
address medical source opinions.  If the RFC assessment conflicts
with an opinion from a medical source, the ALJ must explain why
the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.
SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);
Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891
n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118,
1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative
discussion describing how the evidence supports each conclusion,
citing to specific medical facts and nonmedical evidence, the
court will conclude that his RFC conclusions are not supported by
substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx.
781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must
be sufficiently articulated so that it is capable of meaningful

review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings for the plaintiff:

> ...the claimant retains the residual functional capacity to lift and carry 10 pounds frequently, and 20 pounds occasionally, and sit for four hours per eight-hour workday, and stand and walk for six hours each per eight-hour workday; with the following nonexertional limitations: never climbing ladders, ropes or scaffolds; occasionally climbing ramps and stairs; occasionally stooping and crouching; never balancing, kneeling or crawling; avoiding concentrated exposure to dangerous moving machinery, electric shock, radiation and unprotected heights; avoiding concentrated exposure to extremes of heat and cold; and having the option to change positions occasionally from sitting to standing.

(R. at 19). In making his RFC findings, the ALJ discussed the opinions of various medical sources in some detail (R. at 22-25). In regards to plaintiff's physical RFC, the ALJ gave greater weight to the opinions of Dr. Stein, a treating neurosurgeon (R. at 23), and Dr. Fluter, who examined the plaintiff, and is board certified in physical medicine and rehabilitation (R. at 23). The ALJ also gave significant weight to the opinions of another examining physician, Dr. Murati (also board certified in physical medicine and rehabilitation), insofar as his opinions signify the plaintiff's ability to perform a significant range of light work (R. at 24). For reasons set forth previously, the ALJ gave little weight to the opinions of Dr. Kueser, another treating physician (R. at 24). The court will not reweigh the evidence. The court finds that the ALJ provided a detailed and reasonable basis for relying on Dr. Stein, Dr. Fluter, and to a lesser extent, Dr. Murati, in making his RFC findings.[1]

---

[1]The ALJ erroneously attributed an August 8, 2006 RFC physical assessment to Dr. Murati (R. at 24). The court finds that this assessment is probably from Dr. Do, a treatment provider for the plaintiff, who saw plaintiff on August 8, 2006 and indicated that he gave plaintiff permanent restrictions on that date (R. at 348). The RFC assessment of that date is from Mid-America Orthopedics (R. at 279), the court will take judicial notice of the fact that Dr. Do is the founder of Mid-America Orthopedics (www.midamortho.com, June 29, 2010). Dr. Do indicates on this RFC assessment that plaintiff can continuously lift/carry up to 10 pounds, and occasionally lift up to 20 pounds (R. at 279). Thus, his opinions are consistent with those of Dr. Fluter and Dr. Murati on this issue, and are also consistent with the lifting limitations in the ALJ's RFC findings (R. at 19).

The ALJ also noted that Dr. Murati opined that plaintiff could not crawl and could only rarely bend/crouch/stoop (R. at 24, 284). The ALJ stated that Dr. Murati gave no reasons for these limitations, and found no reasons for these limitations in the record (R. at 24). However, the ALJ did in fact include in his RFC finding that plaintiff can never crawl (R. at 19). The ALJ also noted that neither Dr. Fluter, another examining physician, and Dr. Stein, a treating specialist, had imposed such extreme limitations (R. at 24). The court finds that the ALJ provided a reasonable explanation for discounting the opinion of Dr. Murati that plaintiff can only rarely bend/crouch/stoop, especially in light of the fact that this opinion was not supported by either Dr. Fluter or Dr. Stein.

Plaintiff argues that the ALJ was ambiguous in stating that plaintiff must have the option to change positions "occasionally" from sitting to standing (Doc. 11 at 32). SSR 96-9p states that the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. SSR 96-9p, 1996 WL 374185 at *7. However, the court finds that the use of the word "occasionally" is not ambiguous, but provides the needed specificity for the vocational expert (VE) to determine what jobs plaintiff can perform. The regulations state that the Commissioner will take administrative notice of job information provided by the Dictionary of Occupational Titles (DOT). 20

C.F.R. § 404.1566(d)(1). In making disability determinations, defendant will rely primarily on the DOT (including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles(SCO)) for information about the requirements of work. Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. SSR 00-4p, 2000 WL 1898704 at *1, 2. According to the <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> (SCO) (U.S. Dept. of Labor, 1993 at C-3), "occasionally" involves an activity existing up to 1/3 of the time, "frequently" involves an activity existing from 1/3 to 2/3 of the time, and "constantly" involves an activity or condition that exists 2/3 or more of the time. Occasionally is not an ambiguous term, but is clearly and specifically defined in the SCO. The ALJ therefore properly relied on a term in the SCO to specify how often plaintiff would need to alternate sitting and standing.

Plaintiff also argues that the ALJ failed to consider plaintiff's need for a walker or a cane (Doc. 11 at 32). Although Dr. Kueser prescribed a walker for the plaintiff (R. at 327), the ALJ provided a reasonable explanation for discounting the opinions of Dr. Kueser in light of the other medical opinion evidence. This included the opinion of Dr. Stein, a treating specialist, who stated that there was no structural, pathological

basis to provide medical restrictions on the plaintiff; Dr. Stein therefore gave plaintiff a full release (R. at 22, 228). Furthermore, Dr. Fluter, a consulting specialist, stated that plaintiff was able to transfer and ambulate independently without the use of an assistive device (R. at 20, 250). The ALJ reasonably relied on the medical opinion evidence from Dr. Stein and Dr. Fluter when he did not include in plaintiff's RFC the need for a walker or a cane.[2]

Plaintiff also alleges that the ALJ failed to take plaintiff's obesity into consideration when making his RFC findings pursuant to SSR 02-1p (Doc. 11 at 33). The court finds this argument to be without merit. The ALJ specifically stated the following in his decision immediately after setting forth his RFC findings:

> I have considered the claimant's obesity as required by Social Security Ruling 02-1p, and find that the claimant's obesity does adversely affect his cardiovascular and musculoskeletal functioning, as well as his physical endurance and exertional capacity.

(R. at 19).

Finally, plaintiff argues that the ALJ failed to conduct a

---

[2]Plaintiff also argues that the ALJ erred in accepting the testimony of the VE regarding plaintiff's ability to work while using his walker because the testimony is inconsistent with the DOT (Doc. 11 at 34). However, there is no need to address this issue in light of the court's finding that the ALJ did not err by not including in plaintiff's RFC the need for the use of a walker or a cane.

proper credibility analysis when determining plaintiff's RFC (Doc. 11 at 34). Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. <u>Keeler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. <u>Owen v. Chater</u>, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in <u>Keeler</u>. <u>White v. Barnhart</u>, 287 F.3d 903, 909 (10th Cir. 2002); <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. <u>Hardman v. Barnhart</u>, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand,

24

an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The ALJ found plaintiff not fully credible based on the medical opinion evidence of Dr. Fluter, Dr. Murati, and Dr. Stein, treating or examining specialists, the lack of objective medical evidence (as the ALJ indicated in his decision, most testing showed negative or normal findings), and the medical opinion evidence of psychologists Dr. Mintz, Dr. Cohen, and Dr. Adams (R. at 20-25). The court finds that the ALJ's credibility findings are linked to specific findings of fact fairly derived from the record.

**VII. Did the ALJ err by relying upon vocational expert testimony which was inconsistent with the DOT?**

The ALJ's RFC findings included a limitation that plaintiff avoid concentrated exposure to dangerous moving machinery (R. at 19). The VE testified that with the limitations set forth by the ALJ, plaintiff could perform the jobs of sorter, production worker (bagger), hand packager (dental floss packer), and cashier (R. at 421-423, 26). The DOT describes the position of production work (bagger) as follows:

> Covers garments or household articles with
> plastic or paper bags by any of following
> methods: (1) Hangs garment or article on

stand and covers with plastic bag. (2) Pulls
plastic from rolls, sliding plastic material
over article and tearing plastic at
perforations to form bag of desired size. (3)
Hangs garment on holder in machine and pulls
plastic from roll to envelop garment. <u>Pushes
button or moves lever to close heating irons</u>
that cut and seal plastic to form bag of
desired dimensions. Hangs bagged article on
slide rail or rack. (4) Drops shirts or
folded articles into machine that
automatically envelops articles in plastic
bags and drops articles into box. Removes
boxes from beneath machine when filled and
replaces boxes.

1991 WL 687965 (emphasis by plaintiff). The DOT describes the

position of hand packager (dental floss packer) as follows:

Assembles dental floss packages: Mounts
dental floss cutter in container top, using
jig, and locks cutter in place, using cap.
Cuts away excess floss from roll, using
scissors. Positions roll in bottom half of
container and mounts cutter top. <u>Threads end
of dental floss through cutting mechanism</u>.
Places completed unit in shipping container.

1991 WL 687981 (emphasis by plaintiff). Plaintiff argues that

these two positions involve the use of dangerous machinery which

is prohibited by the ALJ's RFC (Doc. 11 at 35-36).

The court will not reweigh the evidence or substitute its

judgment for that of the Commissioner. <u>Hackett v. Barnhart</u>, 395

F.3d 1168, 1173 (10th Cir. 2005); <u>White v. Barnhart</u>, 287 F.3d

903, 905, 908, 909 (10th Cir. 2002). The ALJ can rely on the

testimony of the VE which is based on his/her professional

experience. <u>Rogers v. Astrue</u>, 2009 WL 368386 at *4 (10th Cir.

Feb. 17, 2009).  The VE testified that the plaintiff could

perform these jobs given the RFC findings of the ALJ, including

the limitation that plaintiff avoid concentrated exposure to

dangerous moving machinery.  Plaintiff does not point to any

evidence indicating that the machinery used for these two

positions is "dangerous moving machinery," and does not point to

any evidence indicating that plaintiff could face "concentrated

exposure" to dangerous moving machinery.  In fact, the

description of the bagger job indicates that there are four

methods to cover items, of which the machinery identified by the

plaintiff is only one of the four methods.  In the absence of any

evidence that these jobs require concentrated exposure to

dangerous moving machinery, the court finds no error in the ALJ's

reliance on the VE testimony that plaintiff can perform the jobs

identified in light of all the limitations set forth by the ALJ.[3]

Finally, plaintiff argues that the VE had no evidence to

support his testimony that these jobs were consistent with the

---

[3]The court would also note that even if the two jobs in
question were eliminated, the ALJ also found that plaintiff could
perform the jobs of a sorter and cashier.  Based on the VE
testimony, the ALJ noted that, nationally, there were 186,000
sorter positions and 1,300,000 cashier positions that plaintiff
could perform (R. at 26).  The 10th Circuit has previously
indicated that "far fewer than 1.34 millions jobs" qualifies as a
significant number of jobs in the national economy.  Raymond v.
Astrue, 356 Fed. Appx. 173, 177 (10th Cir. Dec. 15, 2009); cf.
Stokes v. Astrue, 274 Fed. Appx. 675, 684 (10th Cir. Apr. 18,
2008)(finding only 152,000 jobs in the national economy
sufficient).

DOT in allowing the option to change positions occasionally from sitting to standing, as included in the ALJ's RFC (Doc. 11 at 36). The VE testified that these jobs (with some reduction in numbers) could be performed with an option to change positions from sitting to standing occasionally (R. at 422-423), noting that these jobs could be done either sitting or standing (R. at 424). The ALJ can rely on the testimony of the VE which is based on his/her professional experience. <u>Rogers v. Astrue</u>, 2009 WL 368386 at *4 (10th Cir. Feb. 17, 2009). In the circumstances of this case, the court finds that the VE's testimony regarding the impact of the sit/stand option does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case. The ALJ may rely upon the VE's testimony provided that the record reflects an adequate basis for doing so. <u>Segovia v. Astrue</u>, 226 Fed. Appx. 801, 804 (10th Cir. March 23, 2007). The VE stated that his testimony was based on his experience of seeing jobs performed and national statistics (R. at 425-428). The court finds that the ALJ did not err by relying on the VE's testimony that plaintiff could perform these jobs in light of the need to change positions from sitting to standing on an occasional basis.

**VIII. Did the ALJ commit reversible error by showing bias and hostility against the plaintiff?**

Plaintiff alleges that certain questions and comments by the

ALJ at the hearing demonstrate hostility, bias and prejudice against the plaintiff constituting reversible error (Doc. 11 at 30-31). The court, after a review of the record, including the transcript of the hearing, read in full and in context, finds that plaintiff received a full and fair opportunity to develop the record and present evidence, and that the ALJ did not exhibit a clear bias constituting reversible error. See Shivel v. Astrue, 260 Fed. Appx. 88, 92-93 (10th Cir. Jan. 7, 2008); Gardner-Renfro v. Apfel, 2000 WL 1846220 at *4 (10th Cir. Dec. 18, 2000); Puckett v. Chater, 100 F.3d 730, 734 (10th Cir. 1996).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 21st day of July, 2010, Topeka, Kansas.


                          s/ Sam A. Crow
                          Sam A. Crow, U.S. District Senior Judge